M. & T. TRUST COMPANY, Plaintiff, *v.* EXPORT STEAMSHIP CORPORATION, Defendant.

Supreme Court, Erie County, March 7, 1932.

*Stanley & Gidley* [*Ray M. Stanley* and *Ellis H. Gidley* of counsel], for the plaintiff.

*Kenefick, Cooke, Mitchell, Bass & Letchworth* [*Lyman M. Bass, Gray Williams* and *William P. Stewart* of counsel], for the defendant.

HINKLEY, J. The main question to be determined upon the trial of this action is " whether, in the event of a misdelivery of merchandise at a non-adjacent foreign destination, the shipper is relieved from the obligations of the bill of lading to give notice of loss, damage or delay and commence suit within the respective times therein provided."

At the close of the trial both counsel moved for a direction of a verdict. There were no disputed questions of material facts and the court now renders its decision upon the issues of law presented upon the trial.

The undisputed facts established upon the trial and essential to this decision may be briefly stated. Between the 13th day of October, 1928, and the 13th day of December, 1928, the Stewart Motor Corporation of Buffalo, N. Y., shipped merchandise consisting of automobiles to French Morocco. Part of the shipments moved under through export orders of bill of lading of the New York Central Railroad Company and the balance under defendant's bills of lading. The two forms may be treated alike so far as this decision is concerned. The shipments were made by rail to New York city and thence by vessels of defendant to the foreign port, from November 11, 1928, to January 8, 1929. The defendant delivered all of the merchandise to the notify party without the production or surrender of the bills of lading. These misdeliveries were made from the 13th of November, 1928, to the 1st of February, 1929. Neither the plaintiff bank nor its assignor, the Stewart Motor Corporation, conformed to the requirements of notice and commencement of suit stipulated in the bills of lading. The following section of the through export order bill of lading of the New York Central Railroad Company may be taken as typical of both forms: " Notice of loss, damage or delay must be given in writing to the carrier receiving the goods for transportation between Port A (New York) and Port B (French Morocco) * * * in case of failure to make delivery within 30 days after the goods should have been delivered * * *. Written claim must be filed with such carrier within nine months after giving the aforesaid written notice. Unless such notice is given and claim filed as above provided, the carrier shall not be liable. No suit to recover for such loss, damage or delay shall be maintained unless instituted within one year after the giving of the written notice of loss, damage or delay above provided for."

The misdeliveries of the merchandise by defendant to the notify party without the production and surrender of the bills of lading were misdeliveries and conversions.

The United States Code, title 49, chapter 4, provides:

"Section 81. Transportation included. Bills of lading issued by any common carrier for the transportation of goods * * * from a place in a state to a place in a foreign country * * * shall be governed by this chapter."

"Section 90. Liability for delivery to person not entitled thereto. Where a carrier delivers goods to one who is not lawfully entitled to the possession of them, the carrier shall be liable to anyone having a right of property or possession in the goods * * *."

"Where the failure to require the presentation and surrender of the bill is the cause of the shipper losing his goods, a delivery without requiring it constitutes a conversion." (*Pere Marquette Ry. Co.* v. *French & Co.*, 254 U. S. 538.)

"The general rule is clear that any delivery of property by a common carrier thereof to a person unauthorized by the owner or the person to whom the carrier is bound by contract to deliver it, constitutes a conversion, irrespective of the question of negligence or the exercise of due care." (*Norfolk & W. Ry. Co.* v. *Aylor*, 150 S. E. 252, at p. 254; certiorari denied, 282 U. S. 847.)

"If it [the carrier] delivers goods without the production of the bill of lading, it does so at its peril." (*Carter* v. *St. Louis-San Francisco Ry. Co.*, 18 S. W. [2d] 376, at p. 379.)

There can be no clear understanding of the issues in this action without emphasis upon the distinction among intrastate transportation, interstate commerce and foreign shipments. Likewise of major importance is the fact that this is not an admiralty but a State court.

"Maritime rights may be enforced in the courts of the State of New York." (*Scarff* v. *Metcalf*, 107 N. Y. 211; *Gabrielson* v. *Waydell*, 135 id. 1.)

Notwithstanding the fact that the destination of the merchandise involved in this action was a transatlantic foreign country, it cannot be said that its misdelivery created of necessity a maritime right. The contract was made in the United States and the *lex loci contractus* is the Federal law.

"The rule is elementary that generally the validity or invalidity of contracts is decided according to the place where they are made. (Story's Conflict of Laws [7th ed.], secs. 242, 243.) ' But where the contract is, either expressly or tacitly, to be performed in any other place, there the general rule is, in conformity to the presumed intention of the parties, that the contract, as to its validity, * * * is to be governed by the law of the place of performance.' (Id. sec. 280; Dicey Conflict of Laws [2d ed.], pp. 551, 552, 553.) These principles are applicable to contracts of common carriers. The circumstances may vary the application of the rules, but, says Mr.

Wharton, ' it is a well established *prima facie* rule — liable, however, to be displaced by circumstances indicating a contrary intention — that the validity of a stipulation, in a contract for the transportation of persons or property from one state or country to another, limiting the carrier's common law liability, is to be determined by the law of the place where the contract was made and the transportation commenced, without reference to the law of the place of destination: This rule, * * * considered as a general rule of private international law applies without reference to the place of the loss or injury, though * * * the place of the loss or injury may affect the question whether the enforcement of the stipulation would be contrary to the public policy of the forum.' " (*Fish* v. *D., L. & W. R. R. Co.*, 211 N. Y. 374, at p. 382.)

The bills of lading or written contracts were prescribed as to form by a Federal governmental agency of the United States. (64 I. C. C. Rep. attached to p. 356, case No. 4844, and as amended to include the notice clause in suit in 66 I. C. C. Rep. at p. 690, case 4844.)

" Each of the bills of lading is an American * * * contract, and, so far as concerns the obligation to carry the goods in safety, is to be governed by the American law, and not by the law, municipal or maritime, of any other country." (*Liverpool Steam Co.* v. *Phenix Ins. Co.*, 129 U. S. 397, at p. 461; *Yone Suzuki* v. *Central Argentine Ry.*, 27 F. [2d] 795, at p. 800; 72 A. L. R. 250, note.)

" The action is in trover, but as the state court said, ' if we look beyond its technical denomination the scope and effect of the action is nothing more than that of an action for damages against the˙ delivering carrier.' " (*Georgia, Fla. & Ala. Ry.* v. *Blish Co.*, 241 U. S. 190, at p. 197.)

There is no logical reason why the Federal law which, through its governmental agency, prescribes the form of a contract for transatlantic shipment, should not interpret that instrument in an action brought in a court for damages arising therefrom.

" The proper construction of the bill of lading [for *interstate* shipment] is a Federal question." (*Georgia, Fla. & Ala. Ry.* v. *Blish Co.*, 241 U. S. 190, at p. 195.)

" The determination of Federal law by the Supreme Court of the United States is binding upon the state courts and must be followed, any state law, decision or rule to the contrary notwithstanding." (*Chesapeake & Ohio Ry.* v. *Martin*, 283 U. S. at p. 221.)

The controlling logical reasons which determine the interpretation of an interstate bill of lading prescribed by the government of the United States are of equal force in the interpretation of a trans-

atlantic bill of lading similarly prescribed by the same government. In an action similar to this upon an interstate shipment, it has been clearly held that misdelivery does not abrogate the notice clause.

" The clause with respect to the notice of claims — upon which the plaintiff in error relies in its second contention — specifically covers ' failure to make delivery.' It is said that this is not to be deemed to include a case where there was not only failure to deliver to the consignee but actual delivery to another or delivery in violation of instructions. But ' delivery ' must mean delivery as required by the contract, and the terms of the stipulation are comprehensive, — fully adequate in their literal and natural meaning to cover all cases where the delivery has not been made as required. When the goods have been misdelivered there is as clearly a ' failure to make delivery ' as when the goods have been lost or destroyed; and it is quite as competent in the one case as in the other for the parties to agree upon reasonable notice of the claim as a condition of liability. It may be urged that the carrier is bound to know whether it has delivered to the right person or according to instructions. This argument, however, even with respect to the particular carrier which makes a misdelivery, loses sight of the practical object in view. In fact, the transactions of a railroad company are multitudinous and are carried on through numerous employees of various grades. Ordinarily the managing officers, and those responsible for the settlement and contest of claims, would be without actual knowledge of the facts of a particular transaction. The purpose of the stipulation is not to escape liability but to facilitate prompt investigation. And, to this end, it is a precaution of obvious wisdom, and in no respect repugnant to public policy, that the carrier by its contracts should require reasonable notice of all claims against it even with respect to its own operations." (*Georgia, Fla. & Ala. Ry.* v. *Blish Co.*, 241 U. S. at p. 195; *Chesapeake & Ohio Ry.* v. *Martin*, 283 id. 209, at p. 222.)

The decision of this issue is in nowise affected by the Carmack Amendment, as further amended by the Cummins Amendment (U. S. Code, tit. 49, § 20 [11]), for they do not apply to shipments to non-adjacent foreign territory. (*Lesser-Goldman Cotton Co.* v. *Missouri Pac. R. Co.*, 12 S. W. [2d] 484; certiorari refused, 279 U. S. 855.)

The notice clause in the bills of lading in question cannot be construed to violate the Harter Act (U. S. Code, tit. 46, § 190), which makes it unlawful to insert in a bill of lading any stipulation releasing the carrier from liability for loss or damage arising from negligence, fault or failure of proper delivery of merchandise or

property from or between ports of the United States and foreign ports.

There is a line of authorities not controlling in this case to the effect that causes of action arising upon navigable waters must be disposed of under the principles of the maritime law. (*Encarnacion* v. *Jamison*, 251 N. Y. 218, at p. 220; *Scarff* v. *Metcalf*, 107 id. 211; *Gabrielson* v. *Waydell*, 135 id. 1.)

There is likewise a line of authorities to the effect that under the maritime law an increase of hazard, due to deviation, abrogates all clauses in a bill of lading favorable to the shipper. (*St. Johns Corp.* v. *Companhia Geral, etc.*, 263 U. S. 119.) There is force to the argument in favor of an abrogation of the stipulations in a bill of lading for delivery at a non-adjacent foreign port in the event of a misdelivery. For in entering upon maritime contracts the parties are presumed to have had in contemplation the maritime law (*Union Fish Co.* v. *Erickson*, 248 U. S. 308, at p. 313), and the district judge in *Bank of California* v. *International Mercantile N. Co.* (40 F. [2d] at p. 79) has extended the doctrine of abrogation by deviation to the case of a misdelivery of goods shipped from the United States to Germany.

" To this argument there are two answers. *First,* there is not shown to be any such general maritime law * * *. *Second,* the general maritime law is in force in this country, or in any other, so far only as it has been adopted by the laws and usages thereof; and no rule of general maritime law (if any exists) * * * has ever been adopted in the United States or in England, or recognized in the admiralty courts of either." (*Liverpool Steam Co.* v. *Phenix Ins. Co.*, 129 U. S. 397, at p. 443.)

The question of the validity of a notice provision in a bill of lading in the event of a misdelivery of a non-adjacent foreign shipment has never, to the knowledge of this court, been squarely passed upon by the highest court of the nation. Nor is there apparently any record of any appellate court which has declared as a principle of maritime law that misdelivery deprives the carrier of its right to notice of claim in accordance with the stipulations of a foreign bill of lading.

Opportunity for commercial relations with distant foreign countries has multiplied during recent years as improvement in transportation facilities has figuratively made such countries almost adjacent. The future gives abundant promise of a continuance of that trend. Development of judicial thought and determination must move concurrently. The deviation rule of abrogation of contractual stipulations will not, in the light of modern decisions, be extended but in the future may be discarded in favor of the sanctity of solemn formal mutual engagements.

The determination of the court that the failure of plaintiff to conform to the requirements of the bill of lading as to notice and suit defeats its right to recover and renders unnecessary the determination of the other questions presented upon the trial.

Judgment may be entered in favor of the defendant in accordance with this opinion.